UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THOMAS PINTER, | |
| Plaintiff, | No. 3:15-cv-00772 |
| v. | CHIEF JUDGE SHARP |
| | MAGISTRATE JUDGE NEWBERN |
| MICHIGAN MUTUAL INC., | |
| Defendant. | |

To: The Honorable Kevin Sharp

**REPORT AND RECOMMENDATION**

The District Court referred this action to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(A) and (B) for case management and to dispose or recommend disposition of any pretrial motions under Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court. (Doc. No. 9.)

Pending before the Court is Defendant Michigan Mutual, Inc.'s Motion to Dismiss (Doc. No. 38) to which Plaintiff Thomas Pinter has filed a response in opposition (Doc. No. 41). The undersigned RECOMMENDS that the Motion to Dismiss be DENIED.

**I. Background**

On August 4, 2013, Defendant Michigan Mutual hired Plaintiff Thomas Pinter as an account executive for its mortgage banking business. (Doc. No. 33-1, PageID# 95, 97; Doc. No. 41, PageID# 125.) In January 2014, Pinter suffered a heart attack, underwent open-heart surgery, and was hospitalized for several weeks. (Doc. No. 1, PageID# 89, 97; Doc. No. 41, PageID# 123.) Pinter also alleges that he notified his manager at Michigan Mutual immediately after his surgery

and attempted to communicate with Tiffany Lewis from Michigan Mutual's Human Resources Department, who was unresponsive. (Doc. No. 33-1, PageID# 89–90.) He alleges that Michigan Mutual did not step in to assist his customers; instead, his customers called him while he was at the hospital two days after his surgery and Pinter continued working "the whole time." (Doc. No. 33-1, PageID# 89, 95; Doc. No. 41, PageID# 125–28.)

When Lewis did respond, she requested documentation from Pinter's doctor documenting his medical condition. (*Id.* at PageID# 97.) Pinter provided a letter from his primary care doctor dated February 7, 2014. (*Id.*) On March 4, 2014, Lewis informed Pinter that the letter did not provide enough information and directed Pinter to get another letter. (*Id.* at PageID# 90, 97; Doc. No. 41, PageID# 126.) Though the doctor's office told Pinter that the paperwork it provided was accepted by all its patients' employers, he attempted to obtain the additional information Lewis requested. (Doc. No. 33-1, PageID# 90, 97.)

Pinter next saw his doctor on March 13, 2014, but the doctor did not release him to return to work. (*Id.*) Between March 13 and March 17, 2014, Pinter spoke to Lewis about the required documentation, and Lewis knew Pinter had asked the doctor's office to provide additional information. (*Id.*) Lewis also told Pinter not to return to work until his doctor had released him to do so. (*Id.*)

On March 17, 2014, Pinter found an empty box on his doorstep with a return label indicating it was from Michigan Mutual. (*Id.*; Doc. No. 41, PageID# 126.) When Pinter called Lewis to ask why he had received an empty box, she told him he had been terminated. (Doc. No. 33-1, PageID# 90–91.) He subsequently received a letter from Lewis, dated March 17, 2014, informing him that he had been absent from work since January 20, 2014, was ineligible for leave

through the Family Medical Leave Act (FMLA), and was terminated for failing to appear for work without appropriate leave authorization. (*Id.* at PageID# 98.)

At some point after his surgery, Pinter also sustained a stroke. (*Id.* at PageID# 93.) He alleges that his combined medical conditions resulted in issues with his speech; difficulty bathing, dressing, and standing; depression; atrial fibrillation; and a "drool [e]ffect" when he eats. (*Id.* at PageID# 94.) Nonetheless, Pinter alleges that, prior to his termination, he was able to continue working by phone to assist his customers, "which is how most of [his] business is conducted." (Doc. No. 41, PageID# 125.) Pinter states that he "worked the whole time" he was away from the office and that this period was "[r]eally no different than a usual day," with his wife assisting him with dressing and "day[-]to[-]day usual things." (*Id.* at PageID# 126.) Despite his altered speech, he "managed to close a large loan and continue on." (*Id.*) In general, at that time, he "could still perform [his] duties except for driving for a while[,] which[,] if needed[,] [his] wife could have driven [him]." (*Id.*) Pinter further alleges that "Michigan Mutual was aware [he] was working and meeting most of [his] required dut[ie]s." (*Id.*)

On May 8, 2014, Pinter filed a charge of discrimination with the EEOC against Michigan Mutual. (Doc. No. 33-1, PageID# 97.) In his charge, Pinter states that he has "a disability/a physical impairment that substantially limits one or more major life activities." (*Id.*) He notes that he "had a serious medical emergency directly related to [his] disability" in January 2014, was hospitalized for several weeks, and "underwent major surgery on January 20, 2014 to medically treat [his] disability." (*Id.*) He notified Michigan Mutual "about [his] medical emergency situation related to [his] disability and a need for accommodation (medical leave)." (*Id.*) Finally, Pinter states in the charge that he "was denied an effective accommodation" and "discriminated against based on [his]

3

disability in violation of the Americans with Disabilities Act [ADA]" and ADA Amendments Act of 2008.[1] (*Id.* at PageID# 98.)

Pinter, appearing pro se, filed this civil action against Michigan Mutual on July 14, 2015. (Doc. No. 1.) He filed a motion to amend his complaint to add a jury demand on July 28, 2015 (Doc. No. 7) and moved again to amend his complaint on May 27, 2016 (Doc. No. 33). The Court granted both motions. (Doc. Nos. 9, 37.) On June 22, 2016, Michigan Mutual filed the instant Motion to Dismiss for Failure to State a Claim. (Doc. No. 38.) On July 8, 2016, Pinter filed his response in opposition. (Doc. No. 41.) Pinter has also filed a Notice of Award of Benefits, documenting that he received an award of Social Security disability benefits on December 16, 2016. (Doc. No. 42.) Michigan Mutual also responded to this filing. (Doc. No. 43.)

## II. Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, the plaintiff must allege sufficient facts to show that the claim is "plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

---

[1] Michigan Mutual implies that it is unable to determine the nature of Pinter's claims because, in his Amended Complaint, he states, "I wish assistance from the court to determine what statute I fit in," and otherwise indicates his unfamiliarity with applicable statutory schemes as a pro se plaintiff. (Doc. No. 39, PageID# 111–13; Doc. No. 33-1, PageID# 93.) "The policy behind affording *pro se* plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." *Ahmed v. Rosenblatt,* 118 F.3d 886, 890 (1st Cir.1997). The undersigned finds that, based on the allegations of his filings, Pinter has appropriately made his claims under the ADA.

4

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id*. (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Finally, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## III. Analysis

The ADA bars covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797 (1999) (quoting 42 U.S.C. § 12112(a)). To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show the following: "1) he is an individual with a disability; 2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)). In its Motion to Dismiss, Michigan Mutual argues only that Pinter has not adequately pleaded that he is a "qualified individual" under the ADA. (*See* Doc. No. 39, PageID# 115–18.)

"The ADA defines a 'qualified individual with a disability' as a disabled person 'who . . . can perform the essential functions' of [his] job, including those who can do so only 'with . . .

5

reasonable accommodation.'" *Cleveland*, 526 U.S. at 801 (quoting 42 U.S.C. § 1211(8)). Pinter states that, during the period between his surgery on January 20, 2014, and his termination on March 17, 2014, he "worked the whole time" in a manner that was "[r]eally no different than a usual day" and was able to meet "most of [his required dut[ie]s" because the majority of his work is conducted by phone. (Doc. No. 41. PageID# 125–26.) He specifically alleges that, despite his speech difficulties, he "managed to close a large loan." (*Id.* at PageID# 126.) More generally, Pinter asserts that he is "a veteran of the mortgage banking industry" and "a sought after employee" who "could pick up the phone on any given day and get a job." (Doc. No. 33-1, PageID# 95.) At this stage, these allegations[2] that Pinter was a "qualified individual" are sufficient to state a plausible claim of disability discrimination under the ADA. *See Lynn v. True North Mgmt., LLC*, No. 15-cv-2650, 2016 WL 6995290, at *3 (N.D. Ohio Nov. 30, 2016) (finding plaintiff stated she was "qualified" and able to perform "essential functions" of job by alleging "[s]he had the skills required to complete the tasks of a cashier and customer service representative for nearly thirteen years prior to the decline in her health"); *see also Melman v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:08-cv-1205, 2009 WL 2027120, at *3 (M.D. Tenn. July 9, 2009) ("Determining . . . whether Plaintiff is 'otherwise qualified' . . . is not proper at the pleadings stage.").

Finally, insofar as Michigan Mutual argues in its response to Pinter's notice of Social Security Disability Income (SSDI) benefits that he should be "estopped from arguing that

---

[2] Though many of Pinter's statements about his ability to perform the essential functions of his job as account executive come from his response to the Motion to Dismiss and not his complaint, "we may use [Pinter's] brief to clarify allegations in [his] complaint whose meaning is unclear." *Pegram v. Herdrich*, 530 U.S. 211, 230 n. 10 (2000) (citing C. Wright & A. Miller, Federal Practice and Procedure § 1364, pp. 480–81 (1990)). This is especially appropriate when a plaintiff appears pro se. *See Dallio v. Hebert*, 678 F. Supp. 2d 35, 54 n.22 (N.D.N.Y. 2009) (collecting cases).

Defendant could have reasonably accommodated his disability," (Doc. No. 43, PageID# 141), the Supreme Court has rejected this argument, *Cleveland*, 526 U.S. at 797 ("[P]ursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim."). A plaintiff must explain any apparent contradiction between her ADA claim and Social Security benefits to survive summary judgment. *See id.* at 805–06; *Stallings v. Detroit Pub. Schools*, 658 F. App'x 221, 225–27 (6th Cir. 2016). But no binding precedent directs that a plaintiff cannot state a claim for ADA discrimination because the Social Security Administration (SSA) has found him disabled. As the Supreme Court explained in *Cleveland*, the two inquiries are distinct, "and there are . . . many situations in which an SSDI claim and an ADA claim can comfortably exist side by side." 526 U.S. at 803 (observing, for example, that the SSA's disability determination does not take into account the possibility of reasonable accommodation, while "the ADA defines a 'qualified individual' to include a disabled person 'who can . . . perform the essential functions' of her job '*with reasonable accommodation*'").

**III.    Recommendation**

Based on the foregoing analysis, the undersigned RECOMMENDS that Michigan Mutual's Motion to Dismiss (Doc. No. 16) be DENIED.

Any party has fourteen (14) days after being served with this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days after being served with a copy thereof in which to file any responses to said objections.  Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of the matters disposed of therein.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

Entered 24th day of February, 2017.

ALISTAIR E. NEWBERN
United States Magistrate Judge