UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THOMAS PINTER, | |
| Plaintiff, | Case No. 3:15-cv-0772 |
| v. | Visiting Chief Judge Hood |
| | Magistrate Judge Newbern |
| MICHIGAN MUTUAL INC., | |
| Defendant. | |

To:     The Honorable Denise Page Hood, Visiting Chief District Judge

## REPORT AND RECOMMENDATION

This matter has been referred to the Magistrate Judge for a report and recommendation on any dispositive motion. Now pending is a motion for summary judgment filed by Defendant Michigan Mutual Inc. (Doc. No. 62). Plaintiff Thomas Pinter has responded in opposition (Doc. No. 68), and Michigan Mutual has filed a reply (Doc. No. 69). For the reasons that follow, the undersigned RECOMMENDS that the motion for summary judgment (Doc. No. 62.) be GRANTED.

## I.     Procedural Background

On July 14, 2015, Pinter filed a pro se complaint against Michigan Mutual Inc. for wrongful termination and failure to provide a reasonable accommodation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* After his application to proceed *in forma pauperis* was denied, Pinter paid the civil action filing fee. (Doc. Nos. 2, 3, 6.) After obtaining extensions of time (Doc. Nos. 15, 20), Pinter served Michigan Mutual with process on April 1, 2016 (Doc. No. 23). Michigan Mutual filed a motion to dismiss the complaint for failure to state a claim (Doc. No.

1

27), to which Pinter responded by filing a motion to amend and a proposed amended complaint (Doc. No. 33). After the Court granted Pinter's motion to amend (Doc. No. 37), Michigan Mutual filed a motion to dismiss the amended complaint (Doc. No. 38). The Magistrate Judge recommended that Michigan Mutual's motion to dismiss be denied. (Doc. No. 45.) Michigan Mutual filed objections (Doc. No. 47), to which Pinter responded (Doc. No. 49). After undertaking a *de novo* review, the Court accepted the report and recommendation. (Doc. No. 50.) On April 11, 2017, Michigan Mutual answered the amended complaint. (Doc. No. 53.)

On February 21, 2018, Michigan Mutual timely filed a motion for summary judgment and statement of undisputed material facts. (Doc. Nos. 62, 64.) Pinter responded to Michigan Mutual's statement of undisputed material facts (Doc. No. 68),[1] but did not submit a brief opposing Michigan Mutual's motion. Michigan Mutual filed a reply. (Doc. No. 69.)

## II.     Statement of Facts

Michigan Mutual hired Pinter as an outside account executive in its mortgage banking business on June 20, 2013. (Doc. No. 64, PageID# 212, ¶ 1; Doc. No. 68, PageID# 363, ¶ 1.) Pinter's job involved selling Michigan Mutual mortgage products to new and existing clients and "develop[ing] customer/client relationships." (Doc. No. 64, PageID# 212, ¶ 2, 3; Doc. No. 68, PageID# 363, ¶ 2, 3.) Pinter's employment agreement expressly stated that he would be "[p]erforming his . . . primary duties away from Michigan Mutual's office or other place of business or any home office" and that he would "be expected to spend a majority of work time away from Michigan Mutual's office or other place of business in order to perform the primary duties, . . . including . . . at customers' places of business or residences." (Doc. No. 64-2, PageID#

---

[1]     While signed by Pinter, his point-by-point response to Michigan Mutual's statement of undisputed material facts is not a sworn declaration, is unaccompanied by evidence, and does not cite any of the evidence filed by Michigan Mutual.

236, ¶ II.A.) Additionally, as an express condition of employment, Pinter was required to "at all times possess a valid motor vehicle license . . . , registration and insurance as required by the state in which the motor vehicle is licensed." (*Id.* at ¶ II.F.) Finally, the employment agreement noted that Pinter was "hired to work primarily outside any office, including outside any home office" and that he would "primarily spend his . . . time soliciting and servicing customers at their business offices, and meeting brokers and other referral sources at locations convenient to such persons." (*Id.* at ¶ II.G.)

Pinter testified at his deposition that, when he began his employment, Michigan Mutual did not have a representative in Tennessee and his job duties were "totally a re-startup." (Doc. No. 64-1, PageID# 224.) He did not inherit any existing accounts and had to meet with banks and brokers to get them to sign up for Michigan Mutual products. (*Id.*) He worked from his home, his car, in hotels, "wherever." (*Id.* at PageID# 223-24.) In addition to Tennessee, Pinter's sales territory included Kentucky, North Carolina and South Carolina.[2] (*Id.* at Page ID# 224.) The closest other Michigan Mutual outside account executive was located in Atlanta, Georgia. (*Id.*)

Pinter testified that he would not have been able to perform his job very well if he could not travel several times a week to visit clients and potential clients. He stated that he traveled at least "three days of the five," although he "typically tried to [travel] four days and use Friday as an in-office catch-up kind of thing." Traveling was necessary for his job because he was the "face of the company" to his clients and "face time" was a "very important" part of his job.[3] (*Id.* at

---

[2]     In a letter submitted to the Social Security Administration in support of his claim for disability insurance benefits, Pinter noted that his territory included Tennessee, Alabama and Kentucky.  (Doc. No. 64-4, Page ID# 259.)

[3]     Pinter described his work as follows: "I would set my appointments . . . maybe as far as two weeks out [ ] and I would go to their office and meet with the owners as well as the employees and . . . give them an idea of what Michigan Mutual did." (Doc. No. 64-1, PageID# 225.)

PageID# 225.) Pinter also testified that communication skills and memory skills were important to the performance of his job. (*Id.* at Page ID# 225.)

On January 16, 2014, Pinter suffered a heart attack which required him to be hospitalized for approximately ten days and to undergo triple bypass surgery.[4] (Doc. No. 64-1, PageID# 227, 230.) While Pinter was in the hospital, Pinter's wife contacted his supervisor, Steve Buonanno, to inform him of Pinter's condition. (Doc. No. 64-1, PageID# 230.) On January 30, 2014, Mrs. Pinter emailed Buonanno and explained that "it looks as if he will need 5 weeks to recover before returning to work;" however, Pinter notes that, when his wife sent this email, he did not know "about the complications to follow." (Doc. No. 64-7; Doc. No. 68, PageID# 364, ¶ 14.) Buonanno responded to Mrs. Pinter's email by copying human resources representative Tiffany Lewis and explaining that Lewis "can guide you through [the medical leave] process."[5] (Doc. No. 64-7.)

On February 27, 2014, Lewis called Pinter regarding his return to work and asked him to provide Michigan Mutual with documentation reflecting that he was under the care of a health care provider and the time period he would be under such care. Lewis also asked him to obtain a return-to-work letter and at an upcoming visit with his health care provider and provide it to human resources. (Doc. No. 64-8.)  On March 3, 2014, Pinter submitted a doctor's report to Lewis via email, but the report did not include a return-to-work date. (Doc. No. 64-9.) Lewis responded that

---

[4]      Pinter testified at his deposition that he had his first heart attack before his employment with Michigan Mutual. (Doc. No. 64-1 at PageID# 227.)

[5]      In his response to Michigan Mutual's statement of undisputed material facts, Pinter disputes this fact, stating that "Mr. Buonanno simply said he would have H.R. contact us. Not only did they <u>not</u> contact us but would not return any calls to us." (Doc. No. 68, PageID# 364 ¶ 15 (emphasis in original).) The emails submitted into evidence without objection, however, show that Lewis was copied on Buonanno's initial email to Mrs. Pinter and that Lewis replied to Pinter's messages. (Doc. Nos. 64-7, 64-8, 64-9.)

the report Pinter sent "does not provide the data I need. I need documentation that you are still under a doctor's care and not able to return to work, with the complete dates that you have been under that doctors [sic] care." (*Id.*) Pinter testified that, as of March 2014, his physician had told him he could not return to work, had not not told him when he could return to work, and never provided him with a return-to-work release. (Doc. No. 64-1, PageID# 231.) Pinter also testified that, "I couldn't have went [sic] back to work no matter what, because Michigan Mutual was wanting [documentation that he was medically] clear[ed] – to protect them, I'm sure. And the doctor wasn't willing to give [a work release form] to protect himself, I'm sure." (*Id.* at PageID# 234.) Pinter never obtained a return-to-work release from a physician.[6] (*Id.* at PageID# 232.) Michigan Mutual terminated Pinter's employment by letter as of March 17, 2014. (*Id.* at PageID# 232.)

Pinter testified that, after his heart attack, he was not able to perform his job. (Doc. No. 64-1, PageID# 226.) Pinter also testified that he did not feel like he could perform any banking job after the heart attack. (*Id.* at PageID# 224.) He testified as follows:

> Q:    [Michigan Mutual counsel]   Was there ever a point where you were looking for a job after your employment with Michigan Mutual ended?
>
> A:    [Pinter] Well, yes and no. Yes, meaning I entertained—in the banking business, you know, there's always something going on, and people have an interest in you. But I couldn't—I mean, after my heart attack, I realized that there was no way I could do what I did best and be able to give my employer 100 percent. So there was really no way. So I was looking, but quickly realized that, you know, I couldn't honestly look at someone and say, I'll give you all I got, because I didn't have much left.

---

[6]     Pinter states that he did not "pursue a [doctor's] release after he was fired because he "had no job," but he does not dispute that he did not receive a return-to-work release after his January 16, 2014 heart attack. (Doc. No. 68, PageID# 366, ¶ 21.)

(*Id.*) When asked if he could have done his job as of January 16, 2014, "with assistance or not," Pinter responded simply "no."[7] (*Id.* at PageID# 229–30.)

After his heart attack, Pinter did not propose any accommodations to Michigan Mutual that would have allowed him to continue to work. At his deposition, Pinter was unable to identify any accommodations that Michigan Mutual could have made that would have allowed him to return to work. (Doc. No. 64-1, PageID# 229-30, 233, 234-35.) Pinter stated that he did not believe it was up to him to "find out if [Michigan Mutual] could accommodate me." (Doc. No. 64-1, PageID# 233.) Pinter applied for disability insurance benefits on July 14, 2014. In his application, Pinter stated that he "became unable to work because of my disabling condition on January 16, 2014;" that he was "unable to perform normal work duties effectively;" and that, as of the date of the application, he was "still disabled."[8] (*Id.* at PageID# 239.)

## II.     Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when its proof would establish or refute an essential element of the cause of action. *Golevski v. Home Depot U.S.A., Inc.*, 143 F. App'x 638, 642 (6th Cir. 2005) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). To show the absence of a dispute as to any particular fact, the movant must cite "particular parts of materials in the record, including

---

[7]     Pinter does note that he attempted to continue working and closed a $400,000 loan from his hospital bed after the heart attack. (Doc. No. 64-1, PageID# 230.)

[8]     On April 28, 2015, after he had been terminated from his employment with Michigan Mutual, Pinter had a stroke. (Doc. No. 64-1, PageID# 226.) Pinter supplemented his disability insurance application and was later found to be disabled and unable to perform sustained work activities. (Doc. No. 64-6.) Michigan Mutual devotes a considerable amount of attention to Pinter's ability to work after the stroke. Because it is not necessary to this decision, the Court does focus its attention on Pinter's post-stroke condition.

depositions, documents . . . affidavits or declarations . . . or other materials," Fed. R. Civ. P. 56(c)(1)(A), or "'show[]'—that is point[] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c)(1)(B). Thus, when the non-moving party has the burden to establish an essential element of the cause of action, but fails to cite evidence sufficient to show that the fact is genuinely disputed, the movant is entitled to summary judgment. *Williams v. Ford Motor Co.*, 187 F.3d 533, 537 (6th Cir. 1999) (citing *Celotex*, 477 U.S. at 322–23).

In ruling on a motion for summary judgment, a court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 847 (6th Cir. 2016). The court must not weigh the evidence and determine the truth of the matters asserted but, instead, must "determine whether there is a genuine issue for trial." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). To preclude summary judgment, the nonmoving party must go beyond the pleadings and present specific facts demonstrating the existence of a genuine issue for trial. *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) (citations omitted). "A mere scintilla of evidence by the nonmoving party is insufficient to defeat summary judgment; 'there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *St. Clair Marine Salvage, Inc. v. Bulgarelli*, 796 F.3d 569, 574 n.2 (6th Cir. 2015) (alteration in original) (quoting *Anderson,* 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment may be granted. *Anderson,* 477 U.S. at 249–52.

This Court's Local Rules 7.01(b) and 56.01(c) and (g) govern responses to motions and statements of material facts filed with motions for summary judgment, respectively. Local Rule 7.01(b) states, in pertinent part, that "[f]ailure to file a timely response [to a motion] shall indicate that there is no opposition to the motion." M.D. Tenn. Rule 7.01(b) (response). Regarding responses to statements of material facts in the summary judgment context, Local Rule 56.01(c) requires that any disputed fact "must be supported by specific citation to the record." M.D. Tenn. Rule 56.01(c) (response to statement of facts). Local Rule 56.01(g) provides that "[f]ailure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for the purposes of summary judgment." M.D. Tenn. Rule 56.01(g) (failure to respond). However, "[a] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Evans v. Plummer*, No. 16-3826, 2017 WL 1400495, at *9 (6th Cir. Apr. 19, 2017) (quoting *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). The court must instead examine the motion to determine whether the movant has discharged its burden of demonstrating the absence of a genuine issue of material fact for trial. *Id.*

## III. Analysis

### A. Wrongful Termination

The Americans with Disabilities Act (ADA) provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. Under the ADA, a qualified individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds . . . ." 42 U.S.C. § 12111. To establish a claim for discrimination under the ADA, Pinter must show that he: (1) is an individual with a

disability; (2) is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and (3) was discharged because of his disability. *See Walsh v. United Parcel Service,* 201 F.3d 718, 724 (6th Cir. 2000) (citing *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996)).[9] Michigan Mutual argues that Pinter cannot meet the second element of his claim, that he was otherwise qualified to perform his job with or without accommodation.

An ADA plaintiff is qualified to perform a job when he, "with or without reasonable accommodation, can perform the essential functions" of position. 42 U.S.C. § 12111(8). "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds . . . ," but does not include "the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). In determining whether a particular function is essential, courts consider the following non-exhaustive list of factors:

(i)     The employer's judgment as to which functions are essential;

(ii)    Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii)   The amount of time spent on the job performing the function;

(iv)   The consequences of not requiring the incumbent to perform the function;

(v)    The terms of a collective bargaining agreement;

(vi)   The work experience of past incumbents in the job; and,

(vii)  The current work experience of incumbents in similar jobs.

---

[9]     In *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 317 (6th Cir. 2012), the Sixth Circuit concluded that the plaintiff in a disability discrimination case need not establish that he or she was discharged "solely" because his or her disability and held that the "ADA bar[s] discrimination 'because of' an employee's . . . disability, meaning that [it] prohibits discrimination that is a 'but-for' cause of the employer's adverse decision." *Id.* at 176 (abrogating the conclusion of a number of prior Sixth Circuit cases, including *Monette*, that a plaintiff in a disability discrimination case must establish that he or she was discharged "solely" because of a disability).

29 C.F.R. § 1630.2(n)(3). The inquiry into whether a job function is essential is highly fact-specific. *See Hoskins v. Oakland Cty. Sheriff's Dep't*, 227 F.3d 719, 726 (6th Cir. 2000) (citing *Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 849 (6th Cir. 1998) and *Hall v. United States Postal Serv.*, 857 F.2d 1073, 1079 (6th Cir. 1988)).

While not expressly stated, Michigan Mutual appears to argue that travel, face-to-face meetings with clients, an excellent memory, and good communication skills were essential functions of Pinter's job and that he could perform none of these functions after his January 2014 heart attack. Michigan Mutual cites Pinter's deposition testimony in support of this argument. Pinter does not dispute Michigan Mutual's argument or cite any contrary evidence. Nevertheless, the Court must still determine whether the undisputed facts establish that Michigan Mutual is entitled to judgment as a matter of law on this claim. Fed. R. Civ. P. 56(e)(3).

The evidence offered by Michigan Mutual shows that Pinter's employment agreement required him to perform his primary duties away from any Michigan Mutual or home office; that, to perform his primary duties, he was expected to spend the majority of his time at his customers' places of business or residences; that, at all times during his employment, he was required to possess a valid driver's license, current vehicle registration, and insurance; and that he spent his time soliciting and servicing customers at their business offices or meeting brokers and other referral sources at locations convenient to them. Pinter's deposition testimony confirms that the requirements set forth in the employment agreement reflected the actual job that he performed. *See Hall*, 857 F.2d at 1079 (6th Cir. 1988) (explaining that a determination of the plaintiff's essential job functions "should be based upon more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved"). Pinter testified that, when he started his employment with Michigan Mutual, he worked from his home, in his car,

in hotels, "wherever," and that he spent most of his time traveling for his job—at least three of every five days in the work week. Pinter confirmed that traveling was necessary and that "face time" with clients was a very important part of his job.

In his response to Michigan Mutual's statement of undisputed material facts, Pinter contradicts his deposition testimony, stating that, although face-to-face meetings were his preference, customers can "mostly" be managed by phone or office visits. (Doc. No. 68, PageID# 363, ¶ 5, 8, 9.) Similarly, in an apparent attempt to mitigate his prior testimony, Pinter states that, although good communication and memory skills were important to his work, he keeps good records. (Doc. No. 68, PageID# 364, ¶ 10.) Most significantly, Pinter testified that he did not feel he could do his job or any banking job after his heart attack. While Pinter may have entertained the idea of going back to work in the banking industry, he realized that there was no way he could perform well in a comparable position and that, after his heart attack, he "didn't have much left." (Doc. No. 64-1, PageID# 224.) Pinter also testified that he could not have done his job "very well" if he could not travel and drive and that he was not approved to drive until approximately July 2015.[10] (*Id.* at PageID# 225, 232.) In response to Michigan Mutual's statement of undisputed material facts, Pinter again attempts to backtrack from his deposition. He states that, in testifying that he could not have performed "very well" in his job, he meant only that he could not provide the level of service to his customers that he had historically provided and that he was being hard on himself when he testified that, after his heart attack, he could not give his employer 100 percent. (Doc. No. 68, PageID# 366-67, ¶ 22, 23.)

---

[10]     Pinter's testimony was that he "finally had a doctor . . . approve me to drive . . . probably three months after my stroke." (Doc. No. 64-1, PageID# 232.) Pinter had a stroke on April 28, 2015. (*Id.* at PageID# 226.)

But "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (citing *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)). Pinter does not make his after-the-fact explanations affidavit or any other recognized form of evidence in the record. His unsupported statements are not sufficient to create a genuine issue of material fact as to the essential functions of his job and whether or not he could perform them. The evidence in the record shows that traveling, attending in-person meetings, and effective communication, at a minimum, were essential functions of Pinter's job. The dispositive question is whether Pinter could continue to perform these functions after his heart attack. Based on the record presented, the only reasonable conclusion is that he could not.

Finally, Michigan Mutual argues that Pinter cannot prevail on his disability discrimination claim because he was not given a medical release to return to work and thus, as a matter of law, he cannot establish that he was qualified to perform his job with or without a reasonable accommodation. The Sixth Circuit recently acknowledged that "our caselaw . . . establishes that an employee who has not been medically released to return to work, and therefore cannot perform the essential function of regularly attending his or her job, is not a qualified individual for purposes of the ADA."[11] *Gamble v. J.P. Morgan Chase & Co.*, 689 F. App'x 397, 402 (6th Cir. 2017) (citing *Anderson v. Inland Paperboard & Packaging, Inc.*, 11 F. App'x. 432, 438 (6th Cir. 2001)) (holding that an employee failed to establish a prima facie case under the ADA because her doctor "had not yet given her permission to return to work when her employment . . . was terminated"); *Gantt v.*

---

[11] In *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015), the Sixth Circuit noted that "[m]uch ink has been spilled establishing the general rule that, with few exceptions, an employee who does not come to work cannot perform any of his job functions, essential or otherwise." *Id.* at 761 (internal citation and quotation marks omitted).

*Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (holding that an employee had "not met the second requirement that she be qualified to perform the essential functions of the job" where she was not released by her doctor to return to work, failed to come to work for an entire year, and "gave no indication as to when she would be able to return to work"). Pinter testified that he was never medically cleared to return to work before he was terminated and, despite Lewis's request that he provide a return-to-work release, he did not obtain one from his physician. Without any evidence to dispute these facts, Michigan Mutual is entitled to judgment as a matter of law on Pinter's wrongful termination claim on this basis as well.

### B. Failure to Accommodate

Discrimination as defined by the ADA includes an employer's failure to make reasonable accommodations of the known physical or mental limitations of an otherwise-qualified employee. 42 U.S.C. § 12112(b)(5)(A). To prevail on a failure-to-accommodate claim, Pinter must demonstrate that: (1) he is disabled under the meaning of the ADA; (2) he is otherwise qualified for his job; (3) his employer knew of or had reason to know of his disability; (4) he requested a reasonable accommodation; and (5) the employer failed to provide it. *Burdett-Foster v. Blue Cross Blue Shield of Michigan*, 574 F. App'x 672, 679–80 (6th Cir. 2014). "The employee . . . bears the burden of proposing reasonable accommodations; an employee's claim must be dismissed if the employee fails to identify and request such reasonable accommodations." *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011).

There is no bright-line test for determining whether an employee's request is sufficiently clear to constitute a qualifying request for an accommodation under the ADA. The Sixth Circuit has held that the ADA "does not require employees to use the magic words 'accommodation' or even 'disability.'" *Leeds v. Potter*, 249 F.App'x. 442, 449 (6th Cir. 2007). Nevertheless, a

sufficiently clear request must be made. "The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Gantt*, 143 F.3d at 1046–47.

The evidence establishes that Pinter did not request an accommodation of any kind before he was terminated by Michigan Mutual. In his response to Michigan Mutual's statement of undisputed material facts, Pinter does not dispute that he did not propose an accommodation that would allow him to continue working for Michigan Mutual; nor does he dispute that, at his deposition, he could not think of any accommodation that would have allowed him to keep working. Instead, Pinter claims that he did not ask for an accommodation because no one would return his calls or communicate with him and that he would have liked to have been allowed to recover without stress by knowing that Michigan Mutual would take care of his customers while he was away. (Doc. No. 68, PageID# 367, ¶ 25, 26.) However, even if allowing a stress-free recovery could be considered a reasonable accommodation under the ADA, there is no evidence to suggest that Pinter asked for it and was ignored. Nor is there any evidence to suggest that recovering without stress and knowing that his customers were being served would have allowed Pinter to perform his job—the purpose of a reasonable accommodation. Pinter did not request a reasonable accommodation before his termination and cannot point to one in hindsight that would have allowed him to continue to work. Michigan Mutual's motion for summary judgment must be granted with respect to Pinter's failure-to-accommodate claim.

## IV. Conclusion

For the foregoing reasons, the undersigned RECOMMENDS that Michigan Mutual's motion be GRANTED.

Any party has fourteen days after being served with this report and recommendation in which to file any written objections to it. A party opposing any objections filed shall have fourteen days after being served with the objections in which to file any response. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of further appeal of the matters disposed of therein. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

Entered this 31st day of July, 2018.


_____
ALISTAIR E. NEWBERN
United States Magistrate Judge